NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| CEDESTINO MALAVE, *et al.*, | : | Hon. Faith S. Hochberg, U.S.D.J. |
| | : | |
| Plaintiffs, | : | Civil Case No. 11-3393 (FSH) (PS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| LAURA FREYTES, *et al.*, | : | Date: December 26, 2012 |
| | : | |
| Defendants. | : | |
| | : | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has reviewed the submissions of the parties and considered the motion on the papers in accordance with Federal Rule of Civil Procedure 78.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Cedestino Malave, William Malave, and Elvin Sanchez originally brought this action against Defendants Laura Freytes, the Office of the Passaic County Superintendent of Elections, and Passaic County. Freytes is the former Passaic County Superintendent of Elections and was responsible at all relevant times for overseeing a staff of clerks, investigators, and voting machine technicians. The Governor of New Jersey appointed Freytes to that position in April 2005. Plaintiffs William Malave and Elvin Sanchez (the "Technician Plaintiffs") are former voting machine technicians for the Department of Elections and Cedestino Malave is currently an investigator for that Department.

The Complaint alleges that, on June 12, 2009, Defendant Freytes outsourced the duties of the voting machine technicians and terminated the four technicians, including William Malave and Elvin Sanchez. The Technician Plaintiffs allege that their termination was in fact retaliation for certain complaints and grievances they had filed against Freytes about two issues that they contend were matters of public concern. First, they contend that around January 2009, Freytes instructed the technicians to train her son-in-law Robert Vargas. The technicians, including Plaintiffs William Malave and Sanchez, refused and "complain[ed] about training Vargas to work with them," (Am. Compl. ¶ 17), because "Vargas was intending to run for political office, and the technicians believed that it would be unlawful for him to have access to the voter registration logs" (*Id.* ¶ 16).

Second, in May 2009, the technicians identified the presence of allegedly toxic fumes in the warehouse where they were working. When the technicians approached Freytes about the fumes, she allegedly refused to let them open the doors to the warehouse to let in fresh air because that would compromise the security of the voting machines. Plaintiffs contend that they then contacted OSHA because the fumes "pose[d] a health threat beyond Plaintiffs' own personal safety and could have potentially escaped and threatened the safety of neighboring homes." (*Id.* ¶¶ 21-22.)

Plaintiffs claim that after the Technician Plaintiffs made these complaints, Freytes retaliated against Cedestino Malave based on his association with Elvin Sanchez and William Malave, his brother. (*Id.* ¶ 24.) Specifically, Plaintiffs contend that Freytes's conduct included "threatening Cedestino's employment, constant surveillance of him around the office, and uttering intimidating and threatening remarks," including that "she 'knows people who live near him and would report' to her" if he contacted William. (*Id.*) Plaintiffs further allege that

Cedestino Malave "filed numerous grievances against Freytes due to her retaliatory treatment and harassment" and that "Freytes' official misconduct was not limited to her vocal opposition to . . . union activities." (*Id.* ¶ 26.) Plaintiffs allege that Cedestino also filed a grievance when Freytes demanded that he "fabricate a report to contradict the testimony of [a] voter machine technician" that the technician had interviewed Freytes regarding the contents of the technician's report. (*Id.*) Plaintiffs allege that when Cedestino refused to comply, Freytes became "enraged and hostile towards him, exacerbating an already hostile work environment." (*Id.*)

The Communication Workers of America Local 1032 filed a grievance on behalf of the technicians, which went to arbitration, after which the arbitrator sustained the grievance and found that the employees had been terminated in retaliation for union activity. The arbitration award was then vacated by the Superior Court of New Jersey, which concluded that the grievance should have been brought as an unfair practices proceeding before the New Jersey Public Employment Relations Commission ("PERC"), which has jurisdiction over disputes involving certain labor relations issues among public employers, unions, and public employees. The Superior Court case was then remanded to the Unfair Labor Practices Section of PERC, which Plaintiffs contend also found that the dismissal of the technicians was unlawful. Plaintiffs argue that they could not have presented to PERC the constitutional claims raised in this case because PERC does not address constitutional issues. Additionally, Cedestino Malave was not a party to the PERC action.

On June 13, 2011, Plaintiffs filed a Complaint in this Court. Defendants first moved to dismiss on October 7, 2011. That motion was terminated when the Court granted Plaintiffs leave to amend. The Amended Complaint was entered on December 12, 2011. The Amended Complaint alleges four claims: (1) an action pursuant to 42 U.S.C. § 1983 against defendant

Freytes for violation of First Amendment rights to freedom of speech and association and Fourteenth Amendment right to equal protection; (2) a § 1983 action against defendant Passaic County as Freytes's employer and supervisor; (3) violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1, *et seq.*, by Freytes and Passaic County; and (4) violation of the New Jersey Constitution by both Defendants.

Defendants County of Passaic, Freytes, and the Office of the Passaic County Superintendent of Elections moved to dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On July 17, 2012, Plaintiffs voluntarily dismissed all claims against Defendant County of Passaic with prejudice. (Docket No. 65.) Because Freytes and the Office of the Passaic County Superintendent of Elections joined the County's motion, their motion is still pending before the Court.[1]

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough

---

[1] Plaintiffs requested by letter that the Court terminate Freytes' and the Office of the County Supervisor's motion as moot because Passaic County was dismissed from the action, and the motion filed by Freytes and the Office joined the County's brief. (Docket No. 66.) However, as Defendants Freytes and the Office of the Passaic County Superintendent of Elections have noted in a letter to the Court, their motion is not moot because they remain parties to the case, the County's brief (which they joined) contained arguments equally relevant to the claims against them, and the motion may resolve some of those claims. (*See* Docket No. 67.) Therefore, the Court hereby denies Plaintiffs' request.

facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

## III. DISCUSSION

Defendants Freytes and the Office of the Passaic County Superintendent of Elections (henceforth, "Defendants") argue that the Amended Complaint should be dismissed in its entirety. Specifically, Defendants contend that the first count must be dismissed because: (1) Plaintiffs fail to plead with adequate specificity; (2) the speech was not protected by the First Amendment; (3) Cedestino Malave's rights were not adversely affected; and (4) Plaintiffs fail to demonstrate they were treated differently from other similarly situated employees in violation of the Fourteenth Amendment. Defendants contend the third count must be dismissed because Plaintiffs have not pleaded facts establishing that the grievances are protected by CEPA and because the County is not an employer under CEPA.

Defendants also argue that PERC is the appropriate forum for these union-related complaints, that Plaintiffs have failed to exhaust their administrative remedies by litigating there, and that this Court is bound by issue preclusion to defer to PERC because a state court has already found that claims brought by the Technician Plaintiffs should be litigated in PERC. *See Passaic Cty. Superintendent of Elections v. Comm'n Workers of Amer. Local 1032*, Docket No. C75-10 (N.J. Sup. Ct. Ch. Div. Dec. 17, 2010).

### A.     THE § 1983 CLAIMS

"When evaluating a claim brought under § 1983, [a court] must first identify the exact contours of the underlying right said to have been violated in order to determine 'whether [plaintiff] has alleged a deprivation of a constitutional right at all.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)). The Court must first examine whether the Plaintiff has pleaded claims for violation of the First or Fourteenth Amendments.

#### 1.     FIRST AMENDMENT

In order to establish a valid claim of retaliatory discharge under the First Amendment, a plaintiff must demonstrate: "(1) he engaged in protected activity; (2) he was discharged after or contemporaneous with the activity; and (3) a causal link existed between the protected activity. . . and the loss of his job." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 501 (3d Cir. 1991).

"A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418

(2006)).  The test is the same for freedom to petition claims.  *See Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2500 (2011) (noting that "[i]f a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases").

Defendants argue that the Technician Plaintiffs fail to allege facts that would entitle them to relief for violations of their First Amendment rights to freedom of speech and to petition because they have failed to allege that they engaged in protected activity, as none of their conduct involved a matter of public concern.  Whether the statements made by Plaintiffs were protected by the First Amendment is a question of law.  *See Azzaro v. Cnty. of Allegheny*, 110 F.3d 968, 975 (3d Cir. 1997).  "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Garcetti*, 547 U.S. at 421; *see also Connick v. Myers*, 461 U.S. 138, 147 (1983) ("[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest . . ., a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.").  "While the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'"  *Id.* at 420 (quoting *Connick*, 461 U.S. at 154).  As the Supreme Court has explained, "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services."  *Garcetti*, 547 U.S. at 418.

7

Defendants first contend that Plaintiffs fail to identify the relevant protected speech or petitions. The Amended Complaint is somewhat ambiguous, but it identifies the following instances of speech and/or petition concerning the Technician Plaintiffs: (1) the technicians' complaints to Freytes and OSHA concerning the "toxic fumes," (Am. Compl. ¶ 21); and (2) the technicians' complaints to Freytes and thereafter to the union concerning the technicians' refusal to train Vargas (*Id.* ¶¶ 17, 18). Concerning Cedestino Malave, the Complaint identifies (1) a grievance filed by Cedestino Malave for refusing to fabricate a report (*Id.* ¶ 26) and (2) an alleged infringement of Malave's right to associate with William Malave and Elvin Sanchez.[2]

The Court will address each of the four alleged infringements of First Amendment rights in turn.

a. **Technician Defendants: Freedom of Speech and Right to Petition**

    i. **OSHA**

With respect to the alleged OSHA violations, the Plaintiffs contend that the voting machine technicians were required to work in a warehouse while the roof of the warehouse was being fixed, and that toxic fumes from the roof filled the warehouse. (*Id.* ¶ 21.) Plaintiffs contend Freytes refused to allow the technicians to open the doors to let in fresh air saying that it would violate voting machine security measures. The technicians then called OSHA, which came to the warehouse and concluded that "toxic fumes in the warehouse were indeed elevated, enough to cause problems for people." (*Id.*) Plaintiffs assert that their complaints about toxic fumes were also a matter of public concern because the fumes posed a health threat beyond Plaintiffs' personal safety. (*Id.* ¶ 22.)

---

[2] The Amended Complaint also refers to "numerous grievances" filed by Cedestino Malave about Freytes' "retaliatory treatment and harassment in the workplace" (Am. Compl. ¶ 26), but because the Complaint does not provide *any* detail about the content of those grievances or to whom they were directed, those descriptions are far too vague to meet the *Iqbal* standard.

"Where the retaliation is in consequence of speech amounting to 'complaints about [the] conditions of employment,' no claim may be asserted." *Lee v. Padilla*, No. 11-1463, 2011 WL 3475480, at *3 (D.N.J. Aug. 9, 2011) (quoting *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992)). The Third Circuit has "held that an employee's complaints about safety matters and working conditions did not relate to matters of public concern because the complaints were not made to protect the interests of other employees but only to protect the interests of the complaining employee himself." *Sanguigni v. Pittsburgh Bd. Of Pub. Educ.*, 968 F.2d 393, 399 (3d Cir. 1992) (discussing *Gaj v. United States Postal Service*, 800 F.2d 64, 67 (3d Cir. 1986)).

Defendants contend that plaintiffs' alleged OSHA complaints are best characterized either as complaints about the conditions of their employment, or complaints about safety matters and working conditions, and therefore do not satisfy the requirement that the speech in question relate to matters of public concern. *See Lee*, 2011 WL 347580, at *3; *Sanguigni*, 968 F.2d at 399.

In their Amended Complaint, the Technician Plaintiffs' state that the escape of the fumes "could have potentially escaped," and therefore their "complaint raises a matter of public concern." (Am. Compl. ¶ 22). However, they allege no facts to indicate that the fumes posed a danger to the public or that they were motivated by this concern. Moreover, their actual conduct is in no way commensurate with such a belief—they also contend that they asked Freytes for permission to open the doors to the warehouse (*i.e.*, to release the fumes into the public) and then called OSHA (*i.e.*, not public safety officials like the police or fire department). (*Id.* ¶ 21.) In other words, Plaintiffs have pleaded facts that demonstrate constitutionally unprotected "complaints about the conditions of employment," *Stroman*, 981 F.2d at 156, and, in the

Amended Complaint, have tacked on a mere recitation of the standard for protected speech (Am. Compl. ¶ 22). Plaintiffs' mere recitation of the standard is not sufficient to save their claim. *Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotations and alterations omitted). The Court will therefore grant the motion to dismiss the First Amendment claims arising out of the OSHA-related complaints.

### ii. Training Vargas

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti*, 547 U.S. at 417. For an employee to state a claim for relief based on the First Amendment, he must show that the subject of his speech was a "matter of public concern," and he spoke "as a citizen," and not merely as an employee about matters within his employment responsibilities. *Id.* at 418. The First Amendment does not protect the public employee's speech when he or she speaks "as an employee upon matters only of a personal interest," *Connick*, 461 U.S. at 147, because "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen," but instead "simply reflects the exercise of employer control over what the employer itself has commissioned or created," *Garcetti*, 547 U.S. at 421-22.

The Court first considers whether the speech was a matter of public concern—that is, that it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. In the Amended Complaint, the Technician Plaintiffs allege that they refused to train Vargas out of "concern[] for the integrity of the elections process," (Am. Compl. ¶ 17), because they "believed it was unlawful for [Vargas] to have access

10

to the voter registration logs" (*Id.* ¶ 16.). The reason for refusing to train Vargas was erroneous because the public—including, of course, Mr. Vargas—is expressly and by law permitted access to the voter registration rolls. *See* N.J. Stat. Ann. § 19: 31-18.1 (a)-(b) (requiring the county clerk and commissioner of registration to provide copies of voter registration records to "any voter" requesting them). Deciding, contrary to law, to refuse to obey a supervisor's directive to train an employee for the purpose of preventing his access to information that is publicly available is not an act by that employee speaking about a "matter of public concern." Rather, it was a weak attempt to give a reason for refusing their supervisor's directive. The Technician Plaintiffs had no right to bar Mr. Vargas from accessing information to which he was legally entitled. The Technician Plaintiffs have therefore failed to plead facts indicating their speech regarding Vargas was a "matter of public concern."

     The second element of a First Amendment claim is that the plaintiffs spoke as citizens rather than as employees. In a recent oral ruling, a court in this District dismissed a virtually identical claim brought by another of the technicians terminated by Freytes. *See Tomczyk v. Passaic Cnty. Superintendent of Elections*, No. 10-2972 (D.N.J. June 23, 2011). That court concluded that the technician who refused to share a computer password with Vargas "does not allege facts that support his claim that his refusal to share the computer password was done as a private citizen. Rather, his complaint strongly indicates that maintaining limited access to computer data system[s] [was] a crucial part of his job." (Certification of Christina Silva ("Silva Cert."), Ex. C at 24.) The court in that case determined that the employee's description of his job "leads to the conclusion that he was acting pursuant to his official duties" and that under the logic of *Hill* and *Garcetti*, the technician had failed to state a claim under the First Amendment. *Id*. at 24-25.

11

Plaintiffs Sanchez and William Malave held the same position as the plaintiff in *Tomczyk*. (Am. Compl. ¶ 21.) Like the employee in *Tomczyk*, the Technician Plaintiffs here have failed to adduce facts to support their argument that they were speaking as citizens when refusing to train Vargas. They merely offer the conclusory legal phrase that they "were acting in their individual capacities." (*Id.* ¶ 19.) Plaintiffs have failed to adduce any facts upon which a reasonable finder of fact could find that their conduct concerning Vargas was constitutionally protected as private "citizen" speech. *See Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996).

Plaintiffs argue in their opposition that *Tomczyk* is distinguishable because the plaintiff in that case was a supervisor whose job duties included training new employees, unlike the Technician Plaintiffs here. (Opp. Br. at 15.) That fact is irrelevant, however, because as Plaintiffs acknowledge in their Opposition Brief, "[t]he inquiry [into an employee's duties] is a practical one" by necessity, because "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." *Garcetti*, 547 U.S. at 424-25. Here, the Amended Complaint makes clear that Freytes "told the voting machine technicians" to train Vargas (Compl. ¶ 16) and again instructed all of them "that they *must* train him" (Compl. ¶ 18). Training Vargas, in other words, was a duty they were expected and told to perform, regardless of their formal job descriptions.

Plaintiffs must do more than offer the conclusory statement that they were acting as concerned citizens, rather than as angry or annoyed public employees who did not like or respect Freytes.[3] *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotations and alterations omitted); *Tomczyk*, Silva Cert. Ex. C at 25. All employees of the Office of the

---

[3] She may have been incompetent, a poor manager, and/or nasty, which is what the CEPA laws are intended to redress, but that does not convert this little war into a First Amendment issue of speech of public concern spoken by private citizens.

Superintendent of Elections are charged with the safe storage of the voting machines under New Jersey statute. (Freytes' Reply Br. at 2-3 (citing N.J.S.A. 19:48-3.18, 19:52-7, and 19:48-4).) To the extent that the Technician Plaintiffs voiced concerns about the security of the machines, that is "speech that owes its existence to a public employee's professional responsibilities." *Garcetti*, 547 at 421 (Plaintiff, a deputy district attorney, did not state a claim where his speech concerned misrepresentations in a search warrant affidavit, which he was obligated by his position to communicate to his supervisor); *see also Hill*, 455 F.3d at 242 (employee's speech was not protected where he communicated his concerns about his superior to a town council as part of his duties).

To the extent Plaintiffs acted erroneously but innocently in refusing to train Vargas because they mistakenly thought that the voter registration rolls were confidential, and feel they were improperly retaliated against, they are entitled to raise that complaint under the New Jersey CEPA to the PERC or in the state courts. But where, as here, "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest . . ., a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147.

Because Plaintiffs have not adduced facts to show that they were speaking as citizens, or speaking on a matter of public concern, the Court will grant the motion to dismiss the Technician Plaintiffs' First Amendment claims as to training Vargas.

**b.      Cedestino Malave: Freedom of Speech and Association**

Unlike the Technician Plaintiffs, Cedestino Malave was not terminated, and is still employed by the County. (Compl. ¶ 26.) The Complaint does not identify any adverse

13

employment action taken against him. (*Id.*) His primary complaint is that "Freytes became enraged and hostile towards him." (*Id.*) Cedestino Malave now contends that Freytes has adversely affected the exercise of his First Amendment rights to free speech and association.

### i. Freedom of Association

As an initial matter, Plaintiff has not identified any associational interest that would implicate the First Amendment. In *NAACP v. Alabama*, the Supreme Court recognized that "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." 357 U.S. 449, 460 (1958). To state a claim for violation of the First Amendment right to free association, a plaintiff must plead facts that would indicate that the associational interests at issue are constitutionally protected. *See, e.g.*, *Labov v. Lalley*, 809 F.2d 220, 222-23 (3d Cir. 1987) (finding plaintiff had stated a claim because he pleaded facts demonstrating he was retaliated against in violation of "associational interests which the first amendment protects from hostile state action"). "The First Amendment protects only the right to associate for the purpose of engaging in activities protected by the First Amendment—speech, assembly, the right to petition, and free exercise of religion." *Dotzel v. Ashbridge*, 306 F. App'x 798, 802 (3d Cir. 2009) (citing *Roberts v. United States Jaycees,* 468 U.S. 609, 618 (1984)).

Cedestino Malave has made no factual allegations to support legal claims that any associational interests at issue are constitutionally protected; indeed, the Amended Complaint does not identify any associational interest at all. *Cf. Dotzel*, 306 F. App'x at 802 (dismissing claim because Plaintiff failed to allege that his decision not to associate was "connected to any expressive activity that the First Amendment protects.") None of the allegations in the Amended Complaint describe any actual or attempted association among the Plaintiffs, and certainly none

14

...

of the allegations indicate that the association would have been in order to advance beliefs or ideas protected by the First Amendment.[4] Instead, the Amended Complaint merely recites that Cedestino Malave was retaliated against "based on his association" with the Technician Plaintiffs. (Am. Compl. ¶ 24.) Because Plaintiffs have not pleaded facts that could support a conclusion that Freytes infringed any constitutionally protected associational interests, the Court will dismiss this claim. *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotations and alterations omitted).

### ii. Freedom of Speech

Secondly, with respect to Malave's free speech claim, Defendants argue that the alleged retaliatory actions taken by Freytes against Cedestino Malave are "de minimis" and insufficient to establish a constitutional violation. *Cf. McKee v. Hart*, 436 F.3d 165, 171 (3d Cir. 2006) (concluding in a situation where a plaintiff "suffered no alteration in his employment benefits, pay, or job classification" that a supervisor's critical statements did not rise to the level of a constitutional violation). In support of this argument, Defendants observe that the purported retaliatory conduct against Cedestino Malave did not involve an improper "promotion, transfer, recall [or] hiring" or any other equally adverse employment action. *See Brennan*, 350 F.3d at 419.

"In this Circuit, the test for determining whether an alleged act of retaliation is sufficient to give rise to a retaliation claim is whether the act is 'sufficient to deter a person of ordinary

---

[4] Some courts have also held that to state a claim for violation of the free association right, plaintiffs must allege a public purpose for the association, as in speech cases. *See, e.g.*, *Griffin v. Thomas*, 929 F.2d 1210, 1212-1214 (7th Cir. 1991); *Boals v. Gray*, 775 F.2d 686, 691-693 (6th Cir. 1985). The Third Circuit has not decided the issue. *See Sanguigni*, 968 F.3d at 400 (collecting cases but declining to decide whether in employment cases the association must be for a public purpose). Cedestino Malave has certainly not alleged a public purpose for the association, but because he has not stated a claim, the Court need not decide the issue here.

15

firmness from exercising his First Amendment rights.'" *Smith v. Central Dauphin School Dist.*, 355 F. App'x 658, 668 (3d Cir. 2009) (quoting *McKee*, 436 F.3d at 170). In *McKee*, the Third Circuit stated that "not every critical comment—or series of comments—made by an employer to an employee provides a basis for a colorable allegation that the employee has been deprived of his or her constitutional rights." *McKee*, 436 F.3d at 170 (citations and quotations omitted).

      First, the Court looks to the facts averred in the Amended Complaint. On the second try at stating an Amended Complaint, it is only reasonable to expect that facts will be stated there. Thus, "facts" sprinkled into a brief <u>are not</u> facts averred in a complaint and shall not be advanced to this or any other court as if they were averred in the Amended Complaint. This Court does not treat "facts" in a brief as if they were averred in the Amended Complaint unless they are actually in that Amended Complaint. This is the second time that Plaintiffs have attempted to amend their complaint through an opposition brief. In their Opposition to the first Motion to Dismiss, Plaintiffs included a litany of alleged retaliatory actions Freytes took against Cedestino Malave, including stripping him of his duties and depriving him of overtime and vacation pay, none of which were in the original Complaint. (Opp. to First Motion to Dismiss at 21.) The Court allowed Plaintiffs to file an Amended Complaint to cure deficiencies. Plaintiffs then amended their complaint, mooting the Motion to Dismiss, but the Amended Complaint also failed to include those factual allegations. Now, they again include those allegations in their Opposition Brief. (Opp. Br. at 25-26.) The Court will not consider those factual allegations not stated in the Amended Complaint. Plaintiffs may not "amend" the complaint through statements made in an opposition brief. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Counsel is again admonished to cease this conduct. These "facts" are not to be stated to any court as "facts" in the Amended Complaint.

16

We now turn to the actual facts averred in the Amended Complaint set forth as the basis for the legal conclusion that the alleged "intimidating and threatening remarks" adversely affected Cedestino Malave's free speech rights. In this Circuit, where a plaintiff "suffered no alteration in his employment benefits, pay, or job classification," a supervisor's critical statements do not rise to the level of a constitutional violation. *McKee*, 436 F.3d at 171; *see also Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (noting that "courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands").

Plaintiffs here argue that retaliation is not limited to conduct that affects the terms and conditions of employment. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2412-13 (2006). Plaintiffs further argue that even a trivial retaliatory consequence may suffice to make out a First Amendment claim. *Rutan v. Republican Party*, 497 U.S. 62, 76 n.8 (1990) (noting, in dicta, that the First Amendment "protects state employees not only from patronage dismissals but also from even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights").

However, the central holding in *Rutan* is its prohibition against "promotion, transfer, recall, and hiring decisions based on party affiliation and support." *Rutan*, 497 U.S. 75; *see, e.g.*, *McClintock v. Eichelberger*, 169 F.3d 812, 815 (3d Cir. 1999) (identifying this prohibition as the central holding); *Robertson v. Fiore*, 62 F.3d 596, 599 (3d Cir. 1995) (same). *McKee* makes clear that supervisor criticism is not sufficient to state a claim. *McKee*, 436 F.3d at 171. This rule requires the Court to look to the facts alleged in the Amended Complaint.

17

The Amended Complaint states that a "pattern of retaliatory conduct against Cedestino Malave has been continuous and pervasive since January 2009, when Plaintiffs William Malave and Elvin Sanchez filed their grievances [concerning training Vargas]." While those grievances involved speech by William Malave and Elvin Sanchez, the only examples of speech or petition made by Cedestino Malave averred in the Amended Complaint are the grievances he filed after allegedly refusing to fabricate a report in February 2011 as demanded by Freytes. (Am. Compl. ¶ 26.) Therefore, we look at retaliation by Freytes after February 2011 against Cedestino Malave. In response to Cedestino Malave's grievances, the Amended Complaint states that "Freytes became enraged and hostile towards him." (*Id.*) The Amended Complaint contains no further factual allegations of retaliation that materially affected Cedestino Malave's employment. He was not terminated or transferred, nor did he suffer any diminution in pay, hours, vacation time, or the like—he does not even say that he was denied a birthday party. By describing one episode of Freytes allegedly becoming "enraged and hostile," Plaintiff has not pleaded actual workplace retaliation caused by airing his grievance. He pleads an angry and perhaps petty, poor or dishonest boss, but he pleads nothing that was done to him other than yelling when he regused to write the February 2011 report. This type of claim is what New Jersey's CEPA laws and PERC are enacted to redress. Accordingly, the Court will dismiss this claim.[5]

2.      **FOURTEENTH AMENDMENT**

Plaintiffs also allege that Defendants violated their rights to equal protection of the laws under the Fourteenth Amendment. (Am. Compl. ¶¶ 28-29, 31.) Where, as here, a plaintiff does not allege membership in a suspect class, the plaintiff "must allege that (1) the defendant treated

---

[5] Because Plaintiff has failed to identify any retaliation, his freedom of association claim is also subject to dismissal for this additional, independent reason—that is, that he has not identified any retaliation.

18

him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill*, 455 F.3d at 239.

Simply stated, Plaintiffs do not allege that they were treated differently from others similarly situated. In fact, they allege that all of the technicians were fired, not just these plaintiffs.[6] (Am. Compl. ¶ 23.) "An allegation of an equal protection violation still must contain a claim that a plaintiff has been treated differently from others who are similarly situated." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 244 (3d Cir. 2008). No such averment is in the Amended Complaint. The equal protection claims are therefore dismissed.

**B.  STATE LAW CLAIMS**

Because the Court will dismiss Plaintiffs' § 1983 claims, it will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("This Court has recognized that, 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'") (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). Plaintiffs do not identify any reason that the Court should not decline to exercise supplemental jurisdiction over those state law claims.

Plaintiffs may pursue their claims under the state constitution and the CEPA in state court or before the PERC.

---

[6]  While Plaintiffs contend in their opposition brief that the voting machine technicians were not the only employees to complain to Freytes but were nevertheless the only employees terminated, and that Cedestino Malave, the only remaining employee, is being harassed and retaliated against based on his association with William Malave and Elvin Sanchez (*see* Opp. Br. at 26), none of these allegations is in the Amended Complaint. A brief is not an amended complaint.

19

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss will be granted.  An appropriate order will issue.

/s/ Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J.
